# Illinois Central Railroad Company v. Helen Souders.

1. RAILROADS—*Duty to Stop Trains to Allow Passengers to Alight.*—
It is the duty of a railroad company to stop its trains upon the arrival
at stations a sufficient length of time to enable passengers to alight
with safety.

2. ATTORNEYS—*Improper Statement by, in Arguments.*—After the
evidence was closed and plaintiff's attorney was making the opening
argument to the jury, he commenced to comment upon a change in the
*ad damnum* after the first trial, to which defendant's counsel ob-
jected. The court ruled that the remarks of counsel were improper,
and in the colloquy between court and counsel, the court directed coun-
sel to comment upon the *ad damnum* as then laid, and said, addressing
counsel, "but as to what occurred on the trial of another case for damages
laid there, you have got the limit here; the jury can find whatever they
want, but not exceeding the *ad damnum;* it would be error to let in any-
thing else." *Held,* that these remarks were improper and should not have
been made; but as they were addressed to counsel, in the hurry of the trial,
and not to the jury, and because of the subsequent instructions, the
adverse party has not been prejudiced thereby.

3. SAME—*Duty of the Court, etc.*—Where the remarks of counsel are
improper, the court should not stop with sustaining the objection of
the attorney of the adverse party, but should, by reprimand, at least,
prevent its repetition.

4. COURTS—*Remarks by, Addressed to Counsel.*—Where remarks of
the court are not addressed to the jury, they can not be considered as
instructions, and are not, therefore, a violation of the statute requiring
instructions to be in writing.

5. STATUTE OF LIMITATIONS—*Amendments by Additional Counts.*—
When an amendment to the declaration by an additional count is made
merely to restate in a different form the same cause of action set up in
the declaration as originally drawn, and not to present a new and dif-
ferent cause, a plea of the statute of limitations to such new count can
not be sustained.

6. SAME—*When Additional Counts May Properly be Filed.*—A party
may properly file new counts amplifying and enlarging upon the man-
ner in which an accident occurs and give the details of negligence in
additional counts, without making them obnoxious to the statute of
limitations.

7. DAMAGES—*$20,000 Not Excessive.*—A healthy and vigorous woman,
before the occurrence of the accident in which she was injured,
fifty-four years of age, had for a long time kept boarders as a business,
doing much of the work herself. As a result of the injury she suf-
fered greatly for four years; an ulcer on her right lung developed which

caused continual pain day and night, cold chills, nausea and vomiting of pus. Her arm was so injured that she was unable to use it, which injury the attending physician testified was permanent, and that her condition as to the lung was critical; that an operation might obliterate the pus, but the chances were against her; that she was liable to have a hemorrhage at any time on account of the pus; that she was not able to do any work, and her condition had grown worse. Another physician testified that he thought her condition was beyond the reach of permanent relief, and that her injuries were permanent and fatal. *Held*, a verdict for $20,000 is not excessive.

8. VERDICTS—*Not to be Impeached by Jurors' Testimony.*—The evidence of a juror tending to impeach his own verdict is inadmissible for such a purpose.

Mr. Justice ADAMS dissenting.

9. REVERSIBLE ERROR—*Remarks of the Judge in the Presence of the Jury.*—To be reversible error, it is not necessary that the remarks should be addressed to the jury in the form of an instruction.

**Trespass on the Case**, for personal injuries. Trial in the Superior Court of Cook County; The Hon. JAMES GOGGIN, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Affirmed. Opinion filed November 16, 1898.

### STATEMENT OF CASE.

Appellee was injured November 4, 1893, when alighting from appellant's train, on which she was a passenger, and brought suit therefor. A trial before the court and jury in October, 1896, resulted in a verdict in her favor for $15,000, which was set aside by the court. A second trial, in December, 1897, resulted in a verdict and judgment for appellee of $20,000, from which this appeal is taken.

The original declaration, filed July 5, 1894, after the formal allegations showing the relation of passenger and carrier between appellee and appellant, is, viz.:

"And thereupon it then and there became and was the duty of the said defendant, upon the arrival of the said train at Cheltenham Beach aforesaid, to give the plaintiff an opportunity of safely alighting from said train, and then and there stop the said train a reasonable time to enable the plaintiff so to alight from said train safely as aforesaid; yet the defendant then and there did not regard its duty, or use due care in that behalf, but on the contrary, upon the arrival of said train at Cheltenham Beach aforesaid, on

the day aforesaid, and while the plaintiff, with all due care and diligence, was then and there about to alight from said train, the defendant improperly, carelessly and negligently caused the said train to be suddenly and violently started and moved, by reason whereof the plaintiff was then and there thrown with great force and violence from and off the said train to and upon the ground, by means whereof the said plaintiff was then and there greatly injured and bruised in and about her arm and shoulder, and other parts of her body, and so remained for a long space of time, to wit, hitherto, by means whereof she suffered severe and excruciating pain in body and mind and was obliged to and did lay out large sums of money in and about endeavoring to get cured and healed from her said injuries so sustained, to wit, the sum of $500, and the plaintiff became and is permanently injured as a result of the said carelessness, negligence and improper conduct of the said defendant, and has been during all said time hindered and prevented from transacting and attending to her business and affairs, and has lost and was deprived of all the profits of the same, which she might and otherwise would have made and acquired, to the damage of the said plaintiff of $25,000."

Three additional counts were filed November 5, 1896, which, after the formal allegations showing the relation of passenger and carrier, are :

First additional count, viz.:

" And thereupon it then and there became and was the duty of the said defendant, upon the arrival of the said train at Cheltenham Beach aforesaid, to give the plaintiff an opportunity of safely alighting from said train, and then and there to stop the said train a reasonable time to enable the plaintiff so to alight therefrom safely as aforesaid; yet the defendant then and there did not regard its duty, or use due care in that behalf, and did not then and there stop said train such reasonable time, but, on the contrary, upon the arrival of said train at Cheltenham Beach aforesaid, on the day aforesaid, the defendant then and there stopped said train, and while the plaintiff, with due care and diligence, was then and there about to alight from said train, the defendant improperly, carelessly and negligently, and before the said train had been then and there stopped such reasonable time, caused the said train to be started and moved, by reason whereof the plaintiff was then and there thrown from and off the said train to and upon the ground, by means

whereof the plaintiff was then and there greatly injured and bruised in and about her arm and shoulder and other parts of her body, and so remained for a long space of time, to wit, hitherto; by means whereof she has suffered severe and excruciating pain in body and mind, and was obliged to and did lay out large sums of money in and about endeavoring to get cured and healed from her injuries so sustained, to wit, the sum of $1,000; and the said plaintiff became and is permanently injured as a result of the said carelessness, negligence and improper conduct of the said defendant, and has been during all said time hindered and prevented from transacting and attending to her business and affairs, and has lost and was deprived of all of the profits of the same, which she might and otherwise would have made and acquired."

Second additional count, viz.:

"And it thereupon then became and was the duty of the defendant, upon the arrival of said train at Cheltenham Beach aforesaid, to give the plaintiff an opportunity of safely alighting therefrom, and then and there to stop the said train a reasonable time to enable the plaintiff to alight therefrom safely, as aforesaid; and thereupon it then became and was the duty of the defendant to erect and maintain a platform elevated from the ground to give the plaintiff an opportunity and enable said plaintiff to safely alight from said train upon said platform; yet the defendant did not regard its duty or use due care in that behalf, but, on the contrary thereof, upon the arrival of said train at Cheltenham Beach aforesaid, on the day aforesaid, it stopped said train for the purpose of enabling the plaintiff to alight therefrom, and while plaintiff, with all due care and diligence, was then and there about to alight therefrom, the defendant, before the said train had remained standing or stopped a reasonable time, then and there carelessly and negligently caused the said train to be started and moved forward; and the said defendant at the same time did not regard its duty to erect a platform for the plaintiff then and there to alight upon, elevated a suitable distance above the ground, and thereby the plaintiff was then and there thrown from and off the said train to and upon the ground there, by means whereof, then and there, the shoulder and side of the plaintiff was bruised, hurt and wounded, and the plaintiff internally and permanently injured, and thereby the plaintiff was obliged to and did then and there lay out divers sums of money, amounting to $1,000, in and about endeavoring to be cured of the said injuries so received as

aforesaid; and also by means of the premises the plaintiff then and there became and was sick, sore, lame, paralyzed, disordered and permanently injured, and so remained for a long space of time, to wit, hitherto.

"And the plaintiff avers that she was then and there carrying on a large boarding house in her own right and for her own uses and purposes, managing and conducting the same and doing the work therewith connected, suitable to accommodate a large number of patrons. during all of which time from thence hitherto the plaintiff has suffered great pain and been hindered and prevented from transacting and attending to her business affairs, and has lost and been deprived of divers great gains and profits, which she might and would otherwise have made and acquired."

Third additional count, viz.:

" And thereupon it then became and was the duty of the defendant to provide a suitable and safe platform elevated from the ground at said Cheltenham Beach, upon which plaintiff could safely alight when embarking from said train, and it then and there became the duty of the defendant further, upon the arrival of the said train at the station of Cheltenham Beach aforesaid, to give the plaintiff an opportunity to safely alight therefrom upon such platform, which it was the duty of the defendant to provide, and then and there to stop the said train a reasonable time to enable the plaintiff so to alight therefrom safely upon said platform, as aforesaid; yet the defendant did not regard its duty or use due care in that behalf, but on the contrary thereof, carelessly and negligently neglected to provide any platform upon which plaintiff could alight, as aforesaid, when alighting from said train, elevated from the ground, as aforesaid, and upon the arrival of the said train at said station of Cheltenham Beach, as aforesaid, on the day aforesaid, the defendant then and there stopped said train for the purpose of enabling the plaintiff to alight therefrom, and while the plaintiff, with all due care and diligence, was about to alight therefrom, and before sufficient time had elapsed while said train was stopped for the plaintiff so to do, the defendant carelessly and negligently caused the said train to be started and moved, and thereby the plaintiff was then and there thrown with great force and violence from and off of said train to and upon the ground there, by means whereof," etc., and concluding with allegations of injuries, payments of money to be cured, pain and suffering and loss of business in her own right, etc.

Plea of general issue to all the counts was filed and plea of statute of limitations to the additional counts. A demurrer to the latter plea was sustained; motions for new trial and in arrest of judgment were overruled by the court after verdict and before judgment.

JOHN G. DRENNAN, attorney for appellant; C. V. GWIN, of counsel.

PHELPS & CLELAND, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Twenty-four errors are assigned by appellant, but so far as argued they are in substance, viz.:

First, the verdict is not sustained by the evidence; second, improper evidence was admitted; third, proper evidence was excluded; fourth, the court made improper remarks in presence of the jury; fifth, plaintiff's attorney was disrespectful to defendant's witnesses; sixth, plaintiff's attorney asked improper questions on cross-examination; seventh, plaintiff's attorney made improper remarks to the jury in his argument; eighth, it was error to sustain demurrer to plea of statute of limitations; ninth, plaintiff's instruction was erroneous; tenth, the verdict is excessive; eleventh, the court erred in refusing to consider the affidavit of W. G. Rankin and the oral testimony of a juror offered by appellant on motion for new trial.

The evidence in the record and as abstracted is very voluminous, and a review of it would unnecessarily extend this opinion. It seems sufficient to say that after a careful and critical reading of all the evidence in the light of counsel's argument, we have been unable to reach the conclusion that the verdict is manifestly against the weight of the evidence, and that being so, we should not disturb the verdict. There were only three witnesses to the accident—appellee, her husband and John A. Noonan. The evidence of appellee and her husband does not in all points agree, and does in some respects conflict with their evidence on the first trial,

I. C. R. R. Co. v. Souders.

but we are of opinion that it supports the allegations of due care of appellee, and that appellant did not stop its train a reasonable time to allow her to alight, but caused the train to be started and moved, by means of which appellee was thrown from the train and injured, also the allegation that before the train had remained standing or stopped a reasonable time, the defendant then and there carelessly and negligently caused the said train to be started and moved forward, etc. Mr. Noonan's evidence conflicted with their version of how the injury occurred, and it was for the jury to pass upon their credibility. We can not say the jury were manifestly wrong.

As to the second and third points, the admitting of improper and the exclusion of proper evidence, there may be some question as to the correctness of some of the court's rulings; but even if, strictly speaking, they were erroneous, they were not so prejudicial as to justify us in awarding a new trial.

4th. During the trial, while one of defendant's witnesses, called as an expert with reference to the operation of railway trains, was being cross-examined at considerable length, the court, apparently being wearied by the length and wide range of counsel's cross-examination, addressing counsel, remarked, " Judge, it looks to me that you are going into the mechanism of railways. The only question in this case is whether this lady had time to get off this train or not."

Also, after the evidence was closed and plaintiff's attorney was making the opening argument to the jury, he commenced to comment upon a change in the *ad damnum* after the first trial, to which defendant's counsel objected. The court ruled that the remarks of counsel were improper, and in the colloquy between court and counsel, the court directed counsel to comment upon the *ad damnum* as then laid, and said, addressing counsel, " but as to what occurred on the trial of another case, or damages laid there, you have got the limit here; the jury can find whatever they want, but not exceeding the *ad damnum;* it would be error to let in anything else."

These remarks of the court were certainly improper and should not have been made; but inasmuch as they were addressed to counsel in the hurry and excitement of trial, and not to the jury, and because of the subsequent instructions of the court, we are inclined to the view that appellant was not prejudiced thereby. It does not appear affirmatively that the jury heard the court's remarks. O'Hara v. King, 52 Ill. 306; Beasley v. People, 89 Ill. 580; C., P. & St. L. Ry. Co. v. Blume, 137 Ill. 452.

The remarks of the court, not being addressed to the jury, could not be considered as an instruction to them, and was not, therefore, a violation of the statute requiring instructions to be in writing. The court gave all instructions asked by appellant, twenty-four in number, covering nine printed pages of the abstract, in nine of which the jury are told, in varying forms, but in substance, that before the plaintiff could recover she must show by a preponderance of the evidence that she was in the exercise of due care or ordinary care for her own safety, and that if her injury was the result of negligence on her part, even though the negligence of defendant as charged was established, still she could not recover. By the eighteenth instruction for the defendant, the jury are told that " while the court does not intend to intimate to you how you shall find the facts in this case, still the court instructs you that under your oaths and under the law, it is your sworn duty to find the facts in accordance with the evidence introduced in the trial of this cause and from no other source."

With these instructions before the jury in their deliberations, even if the jury heard the court's remarks, we can not believe they were misled by them, being addressed to counsel during the progress of the trial.

As to the fifth, sixth and seventh points, the alleged disrespectful treatment of defendant's witnesses, the asking of improper questions on cross-examination, and of improper remarks to the jury in argument, it seems unnecessary to discuss them in detail. The remarks of counsel complained of were improper, and the court should not have stopped

with sustaining the objection of defendant's attorney, but, by reprimand at least, prevented its repetition.

The questions asked on cross-examination were not improper. The remarks of counsel in argument to the jury were not of so serious a nature as to prejudice appellant, and when objected to, although in one instance the court overruled the objection, the remarks were stated by counsel to be withdrawn by him, and he further said in that connection, that if he said anything in the argument which was not in the evidence, he wished the jury to disregard it.

8th. The additional counts of the declaration do not state new causes of action, as claimed by appellant, but are merely a restatement, in different language, of the case made by the original count. The gist of the negligence charged in the original declaration is found in the allegation that when plaintiff was about to alight from the train " the defendant improperly and negligently caused the said train to be suddenly and violently started and moved," while in the first additional count it is that defendant did not stop the train a reasonable time, and while the plaintiff was about to alight from the train " the defendant improperly, carelessly and negligently, and before the train had been then and there stopped such reasonable time, caused the said train to be started and moved; " the second additional count is the same in substance as the first, with the further charge that " the defendant at the same time did not regard its duty to erect a platform for the plaintiff then and there to alight upon, elevated a suitable distance above the ground; " the third additional count is the same in substance as the first, with the further charge that " defendant carelessly and negligently neglected to provide any platform upon which plaintiff could alight."

It will thus be seen, the negligent starting of the train is relied on in each of the counts as the cause for appellee's being thrown down and injured, and it can make no difference that in the first count it was the suddenly and violently starting the train, while in the other counts it was starting the train too soon and before plaintiff had time to alight.

Neither does it make a new cause of action because in the
second and third additional counts there was coupled with
the starting of the train the charge in one count as to a plat-
form sufficiently elevated, and in the other count that there
was no platform. Swift v. Madden, 165 Ill. 45; N. C. R.
Co. v. Monka, 107 Ill. 343; C. & A. R. R. Co. v. Henneberry,
153 Ill. 359; Harper v. I. C. R. R. Co., 74 Ill. App. 75;
Secord-Hopkins Co. v. Lincoln, 173 Ill. 362; Eylenfeldt v.
Ill. S. Co., 165 Ill. 185, and cases cited.

In the latter case the court say : " When the amendment
by an additional count is introduced merely to restate in a
different form the same cause of action set up in the decla-
ration as originally drawn, and not to present a new and
different cause of action, the rule does not apply, and a plea
of the statute of limitations to such new count can not be
sustained."

In the Harper case, *supra*, the court say : " Plaintiff
could properly file new counts amplifying and enlarging
upon the manner in which the cars were driven together,
and could give the details of their negligent management
in additional counts, without making them obnoxious to the
statute of limitations."

9th. Plaintiff's instruction which it is claimed was erro-
neous is, viz.:

" If the jury find the issues for the plaintiff, then the
plaintiff is entitled to recover such actual damage as the
evidence may show she has sustained as the direct or approx-
imate result of such injury, taking into consideration her
loss of time, her pain and suffering, her necessary and rea-
sonable expenses in medical and surgical aid so far as the
same may appear from the evidence in this case; and if the
jury find from the evidence that the said injury is perma-
nent and incurable, they may also take this into consider-
ation in assessing the plaintiff's damages."

Nineteen different reasons are stated by appellant's coun-
sel why this instruction is erroneous. It could serve no
useful purpose to discuss them in detail. We can not, how-
ever, commend the course of counsel in thus taxing his mental
powers and imagination in endeavoring to point out so
great a number of errors in one short instruction.

In C. & E. I. R. R. Co. v. Holland, 122 Ill. 470, an instruction almost identical with the one at bar in a case where the proof was of like facts, was approved by the Supreme Court, and we see no reason, under the evidence in this cause, considered in the light of the exhaustive and ingenious argument of counsel, why there was error in giving this instruction.

10th.   The verdict is large, but after full consideration of the injuries sustained by appellee, as shown by the evidence, we are unable to arrive at the conclusion that the verdict is excessive or the result of passion or prejudice of the jury. Appellee was a healthy and vigorous woman before the accident; at the time of the trial fifty-four years of age; had for a long time kept boarders as a business, having at times a large number, doing very much of the work herself.   As a result of the injury the evidence tends strongly to show that she had suffered greatly for four years; an ulcer on her right lung developed, which caused continual pain day and night, cold chills, nausea and vomiting of pus or corruption as stated by appellee, about every two weeks; her arm was so injured she has been unable to use it, which injury the attending physician testified was permanent, and also that her condition as to the lung was critical; that an operation might obliterate the pus, but the chances were against her; that she was liable to have a hemorrhage at any time on account of the pus; that she was not able to do any work, and her condition had grown worse.   Another physician testified that he thought her condition was beyond the reach of permanent relief, and that her injuries were permanent and fatal.   This evidence was not, in our opinion, overcome or materially affected by defendant's evidence.

11th.   There was no error in the court's refusing to consider, on the motion for a new trial, the affidavit of Rankin that there had appeared in the newspapers a statement to the effect that a verdict for $15,000 had been rendered at the former trial, nor was there error in refusing to hear the testimony of a juror to the effect that information reached the jury that on a former trial plaintiff recovered a verdict

:

for $15,000, and that the former trial court did not consider that verdict excessive, but set it aside solely on the ground of improper conduct of one of the attorneys. If newspaper reports such as these of former trials of a case getting to a jury are sufficient ground for a new trial in a civil case in Chicago it would be almost impossible to sustain any verdict on a second trial. It was entirely proper for the court to refuse to listen to a juror's testimony tending to impeach his own verdict. Sanitary Dis. v. Cullerton, 147 Ill. 389.

There being no reversible error in the record, the judgment is affirmed.

Mr. JUSTICE ADAMS, dissenting.

In this case the sum assessed by the jury as damages is large and the evidence is so conflicting that had a verdict been rendered for appellant it could not be set aside on the ground that it was contrary to the evidence. Such being the case, I can not concur in the view that the remarks of the court, excepted to by appellant's counsel, did not create an impression on the minds of the jury prejudicial to the appellant, which affected their verdict. It must be admitted that the remarks of the court were of a character well calculated to produce on the minds of the jurors an impression unfavorable to the appellant, and it can not, in accordance with reason, be presumed that they did not produce the effect which they naturally tended to produce.

Neither can I concur in the view that the instructions, however favorable for appellant, removed the unfavorable impression produced by the remarks of the court. It can not be said with certainty that the instructions had that effect. It must, therefore, be admitted that they may not have had that effect. It has been held that the erroneous admission of evidence prejudicial to a party could not be cured by an instruction. Railroad Co. v. Winslow et al., 66 Ill. 219; Fire Ins. Co. v. Rubin, 79 Id. 402.

To say in such a case as the present that the remarks were made to counsel and were not in the form of an instruction to the jury is, in my judgment, a mere evasion, and does not touch the substance of the matter.

To be reversible error it is not necessary that the remarks should be addressed to the jury in the form of an instruction. Appellate Procedure, by Elliott, top p. 618; 1 Thompson on Trials, Secs. 218, 219; McIntosh v. McIntosh, 79 Mich. 198.

Judgments have been reversed on account of improper remarks made by counsel to the jury in argument. That improper remarks tending to influence the jury, made by the court in the presence and hearing of the jury, are likely to have much more influence than such remarks made by counsel, is too obvious to require argument.

To hold, in such a case as the present, that the remarks complained of were not so prejudicial to the appellant as to warrant a reversal of the judgment is, in my opinion, to establish a dangerous precedent.