BERNARD STRAUGH V. THE DETROIT, LANSING & NORTH-
ERN RAILROAD COMPANY.

*Negligence—Injury at railroad crossing—Contributory negligence.*

In this case, the judgment of the court below being affirmed by an
equal division of the Court, *nothing is decided.*

Error to Ingham. (Gridley, J.) Argued January 12,
1887. Decided May 5, 1887.

Case. Plaintiff brings error. Affirmed by an equal
division of the Court. The facts are stated in the opinions.

*Huntington & Henderson,* for appellant.

*R. A. Montgomery,* for defendant.

CAMPBELL, C. J. The court below took this case from
the jury, on the ground that the conduct of plaintiff in cross-
ing the railroad under the circumstances was an act of mani-
fest and unquestionable recklessness. The facts, n our
view, fully sustained this ruling. The track was in plain
view for a distance so great that no one could fa l to ee the
approach of the cars who paid the slightest attention to
what he was about. No person has a right to endang r his
own safety, or that of those upon a railway train, by
attempting to cross the track in plain view of the danger.

The judgment should be affirmed.

CHAMPLIN, J., concurred with CAMPBELL, C. J.

MORSE, J. The plaintiff brought suit to recover damages for
injuries to his sleigh and himself, occasioned by a train of
defendant, on the twenty-fifth day of January, 1883, at a
highway crossing between Delta and Lansing, and about
three miles west of the latter city.

The negligence of the defendant averred in the plaintiff's declaration was the failure to ring a bell or sound a whistle in approaching the crossing.

At the close of the testimony upon the part of the plaintiff, the circuit judge directed a verdict for the defendant, on the ground that the plaintiff was in fault in not taking the means that an ordinarily prudent man would have taken to ascertain whether there was a train coming before attempting to make the crossing.

The plaintiff is a butcher, residing in the city of Lansing. On the day in question he was out in the country procuring stock for his business. He was driving two horses, attached to a light pair of bobs, with a bare light box. The runners were about a foot or 13 inches high, and the height of the box about a foot. The seat was a slight one, resting on the box and in front. There was a rack over the box, but the space in front of the driver and at his side was open. He had 60 or 70 chickens and one sheep in the sleigh. He approached the crossing from the west, about 10 o'clock P. M. For about 60 rods the road runs parallel to and quite near the railroad track. At the crossing it takes a square, abrupt turn, and passes over the railroad at right angles. On the north side of the road, and nearly opposite the turn of the highway to cross the track, stands the house of William Covert. The plaintiff testifies that there was a heavy fall of snow upon the ground, from a foot and a half to two feet in depth. It was very cold, and he was bundled up,— had a big sheep-skin coat on, a cap over his head, but nothing around his ears. He noticed the light in Covert's house. When the horses began to turn, he stopped them. The chickens were breathing hard, so he took a stick and poked them back. He looked down the track both ways; could see nothing, and heard nothing. He then drove on; and, when the head of the horses came on to the track, he saw the headlight of the train. It was impossible for him to pull back or

turn around, so he tried to get across; but before he could do so, the locomotive struck the sleigh, lifted it up, knocked the horses down, the tongue broke, and he was pulled over the dash-board. He fell so near the track that he could not and dared not move until the train passed. The horses ran home. Plaintiff fell upon the south side of the railroad track. It was a moonlight night.

It was conceded, for the purposes of the trial, that no bell was rung or whistle sounded for this crossing, as shown by the testimony of plaintiff and other witnesses.

The fence along the railroad track was an ordinary board fence, between four and five feet high; there being in some places four boards, and in others five, and a board cap on top, setting on an incline. The posts were split, and of cedar. The witnesses testified to the effect that a person sitting in a sleigh just at the corner of this turn in the highway would have his view of the track obstructed by the corner post and the fence. This obstruction covered a space varying, in the opinion of the witnesses, from four feet and upwards. One witness thought that, if a person sitting in a sleigh opposite the corner of the fence in the highway should lean forward or backward two feet, he could have seen a head-light of an approaching train for 70 or 80 rods, or more, and that this was the only spot in the road where the vision of the head-light would be obstructed.

The testimony showed a cut in the railroad, for the first 28 rods west of the crossing, of about three and one-half feet; then a fill, for the next 40 rods, of five feet in its highest point; then 14 rods of 4-feet cut, followed by a fill of 11 feet for 62 rods; then a cut of 10 feet for a distance of 41 rods, followed by a fill of three feet for 55 rods.

It is contended that the plaintiff could not have looked, as he testifies he did, without seeing the head-light of this freight train, which was approaching from the west. He swears, however, that he stopped his team, and looked both

ways along the track; he listened; he heard and saw nothing.

It is not the province of this Court, in my opinion, or of the trial court, to pass upon the truth or falsity of the testimony of a witness in a case at law. The credibility and the weight of testimony is for the jury. If there is absolutely no evidence tending to show a fact to be determined, or the uncontradicted and undisputed testimony establishes such fact beyond cavil or question, then the court may so instruct the jury; but if there is evidence to consider, and such evidence is to be questioned, then a jury must deal with it, and decide upon it.

It is argued that the plaintiff, under the circumstances, must have seen the head-light of the locomotive, if he looked at all; or that, if he did look, he did not stop in the right place to look, or did not take pains to lift his head sufficiently high to raise his vision above the board fence; and that an ordinarily prudent man, if in a place where his vision was obscured by the post at the corner of the fence, would have leaned sufficiently forward or backward to have gained an unobstructed view, or would have glanced between the boards.

The main argument, however, is directed against the truth of the plaintiff's statement that he stopped and looked. As already shown, this cannot be considered here.

And I do not think that a man must strain his eyes for a mile or so before he reaches a railroad track for sight of a head-light, or keep his mind or ears for that distance directed towards a possible approaching train. It is enough if the thought and caution comes to the mind before the track is attempted to be crossed, and time is taken to look and listen.

This was a freight train. Unlike a regular passenger train, its goings and comings were not familiar to the plaintiff, nor was the time of its crossing at all uniform.

Within a few feet, about 30, he stopped, and looked and listened. He stopped long enough to hear, but heard no bell or whistle. He saw nothing. It was not necessary that he

should stand up in his sleigh; probably not one man in a hundred would have done so. The very fact that he knew the crossing and its surroundings well would have a tendency, when he glanced down the track and saw nothing, to disarm any suspicion that the fence or anything else was obstructing his vision; and the fact that he heard no bell, whistle, or other sound of an approaching train, and not knowing that any was due, would still further lull him into security, and prevent him from moving on or backward in order to get a better view.

When this train gave no warning of its approach, save the noise of its travel, in a windy night, I am not prepared to hold as an inevitable conclusion that the plaintiff was negligent in not perceiving that the fence was obstructing his sight, or in not choosing a different stopping place, or in not looking before he did, or in not standing up in his sleigh. That seems to me to be a most proper subject for a jury to dispose of.

One thing is certain, if he tells the truth,—it would have been much safer for the plaintiff if he had not stopped and looked at all. In that case, he would, as it turned out, have made the crossing before the train reached it. He took the precaution the law required, if his testimony is to be believed. Having never seen the plaintiff on the stand as a witness, or the scene of the accident, I shall not here determine that he has committed perjury, nor shall I hold him responsible for not taking precautions that would not ordinarily have been suggested to a prudent and careful man, although it now appears that such precautions would have prevented the injury.

The defendant, upon this record, was grossly negligent, and yet seeks to defeat the plaintiff because he did not take extra precautions.

The case should have been submitted to the jury.

SHERWOOD, J., concurred with MORSE, J.