THOMAS KEATING, BY HIS NEXT FRIEND, v. THE DETROIT,
BAY CITY & ALPENA RAILROAD COMPANY.

*Negligence—Pleading—Railroad companies—Injury to passenger—
Defective loading of logs—Evidence.*

1. In a personal injury case the plaintiff need only prove action-
   able negligence, although he has in his declaration characterized
   the negligence complained of as gross and wanton; citing
   *Richter v. Harper*, 95 Mich. 221.

2. Plaintiff sued defendant to recover for injuries received, as he
   claimed, by reason of the improper loading of logs upon flat
   cars attached to the passenger car in which the plaintiff was
   riding at the time of the accident.   The testimony tended to
   show that some of the loads were higher than usual; that the
   bottom tier of logs was held on the car by means of stakes
   about 18 inches high, placed on either side of the logs; that
   the logs were piled in pyramid shape, the bottom tier contain-
   ing five logs; that the top or cap log on one of the loads lay
   upon a log which was crooked at one end, and was held in
   place by a block placed under it, and a wedge driven into the
   bottom log; that by reason of the manner of loading, when
   shaken from its place, one of the logs rolled down, struck the
   switch timber, and broke it, moving the switch rails just as
   the train was halfway over the switch, thus derailing all the
   cars which had not passed over the switch, including the one
   occupied by plaintiff, and causing the injury complained of.
   And it is held that it was for the jury to say whether it was
   negligent to load the cars in the manner stated.

3. It was not error to admit testimony as to the speed of the train
   and the absence of a bell cord, coupled with an instruction
   that the evidence could only be considered as bearing upon
   the question of whether it was negligent to load the cars in
   the manner in which they were loaded, having reference to
   these conditions.

4. The defendant could not discharge its liability to plaintiff by
   showing that its agents inspected the cars before starting out
   on the trip, if in fact the train was not in proper condition
   with respect to the safety of the passengers.

5. Testimony of witnesses as to the rate of speed at which the

train was running was competent, even if of little value; citing *Guggenheim v. Railway Co.*, 66 Mich. 155.

Error to Iosco. (Simpson, J.) Argued February 13, 1895. Decided March 19, 1895.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Atkinson & Haigh* (*W. T. Mitchell* and *T. M. Morton,* of counsel), for appellant.

*M. J. Connine* and *Charles A. Jahraus,* for plaintiff.

MONTGOMERY, J. The plaintiff, on the 24th of September, 1891, became a passenger on an accommodation train of defendant. The train was made up by attaching several cars loaded with logs to the train, in front of the passenger car, which was at the rear end. While the train was passing over a switch a few miles from where plaintiff got aboard, the car in which the plaintiff was riding was derailed. The end of one of the rails crushed up through the bottom of the passenger car, striking the plaintiff in the breast, breaking his ribs, injuring his lungs and spine; then passed up through the top of the car. The injuries resulting were very severe, and the plaintiff recovered a verdict of $10,000. Defendant appeals.

The declaration alleged that the defendant negligently attached, to the train carrying passengers, cars loaded with logs, and loaded too high to be safe, and with logs not bound or fastened to the car, and ran the train of cars at a dangerous rate of speed, in a jerky, jolting, and irregular manner, and negligently failed to provide any rope or cord from any of the cars to the bell upon the engine. At the conclusion of the testimony, the court withdrew all questions of negligence from the jury, except the one depending upon the manner of loading the logs.

In form, the declaration averred the negligence of defendant to have been gross, wanton, etc. It is insisted that there is no evidence that the negligence was gross or wanton. But as was held in *Richter v. Harper,* 95 Mich. 221, it is not incumbent on the plaintiff to go further than to prove actionable negligence, although he has used words characterizing it as gross and wanton.

It is also insisted that there was no evidence of improper loading. The plaintiff produced as a witness one James Schram, who testified that—

"The logs were not fastened to the cars except by stakes. The stakes were 18 or 20 inches long. Should say the stakes projected a foot to a foot and a half above the top of the car."

Witness Oakes testified:

"I noticed the logs loaded on the cars. They were fastened by stakes from the bottom tier, and no other fastening. Should say these stakes were 18 or 20 inches above the platform of the car. I should judge the top log on the cars would be 5 or 5½ feet from the bottom of the car. The logs would average 12 or 14 inches in diameter, and they were 12, 14, and 16 feet in length."

The witness Henderson testified that he loaded the logs on the cars.

"They were generally loaded from 4½ to 5 or 6 feet high. That day there were three or four pretty big loads on these cars. I should say 7 feet high. I loaded them. The bottom tier of logs was fastened with stakes, and the rest were not fastened at all. Aside from the stakes that held the bottom tier, there was no other fastening to hold the logs on the car. The stakes projected up 18 inches above the platform of the car. One of the logs was secured by me by a block. I placed the block under the log, and drove a wedge in the bottom log to keep the block from coming out. That log was the top or cap log on one of the cars that was loaded so high. The log I wedged was a hemlock log, peeled, about 14 inches at the top. It was on the fourth car from the tail end as they backed them from the skidways. There were five cars in

all. That would make it the second car from the front car. The wedge was on the right-hand side of the car, facing the engine. * * * I thought at the time that there was something wrong about the loading, but I did not give the railroad men any notice of it, because they look after that themselves. * * * The reason why I put the block under the log was that it did not lay firm, and I thought it might roll off. One of the logs under it was crooked at the big end. This top log was a little larger at one end than the other. I noticed the height of the logs on the car. When I jumped down, I could just about reach the top. Standing on the platform, at the end of the car, I could just about reach the top log as they were loaded that day."

The declaration alleges that the loading was too high to be safe; that the logs were carelessly, crookedly, and unskillfully loaded; that the logs were not bound or fastened upon the cars. It is contended by the defendant that the evidence shows that the logs were loaded in the ordinary manner, and that, in the absence of evidence that the customary way is in itself improper, it will not be inferred that what is customarily done is negligent. But we think in this case that, with all the facts before the jury, it was for them to say whether it was negligent to load the cars in the manner in which they were loaded. It is true, it was held in *Grand Rapids & Indiana R. R. Co. v. Judson,* 34 Mich. 506, that it is not presumptively negligent to run a train of cars in the usual manner, without proof that such usual manner is in itself improper. But there was evidence from which the jury might have inferred that there was an unusual quantity of logs loaded upon some of the cars, and it was proper, under the circumstances, for the jury to draw an inference as to whether, in view of the risk incurred, it was proper to load these logs in such a manner that they would be jolted by running the train in the manner in which it was run. There was testimony tending to show that the injury occurred by the very fact that these logs

were loaded in such manner as that, when shaken from its place, one of the logs rolled down, struck the switch timber, and broke it, driving the switch rails just at the time the train was about halfway over the switch, thus derailing all of the cars which had not passed over the switch, and causing the injury which resulted to the plaintiff.

It is complained that the judge admitted testimony as to the speed of the train and as to the absence of a bell cord. But we think these were conditions which could not well have been eliminated from the case. What might have been proper loading for running the train in one manner might not be proper in case of a higher rate of speed; and the circuit judge, in his charge, limited the application of the testimony, and instructed the jury that it could only be considered as bearing upon the question of whether it was negligent to load the cars in the manner in which they were loaded, having reference to these conditions. We think no error was committed in this regard.

A special question was submitted to the jury, whether the logs were loaded in the usual way; and the court was asked to instruct the jury to answer this question in the affirmative, which he refused to do, and the jury answered the question in the negative. As before stated, there was testimony from which the jury might have found that some of the logs were not loaded in the usual way. Henderson testified that the logs were generally loaded from $4\frac{1}{2}$ to 5 or 6 feet high; that "there were three or four pretty big loads on these cars. I should say 7 feet high." And on cross-examination he testified as follows:

"I thought at the time that there was something wrong about the loading, but I did not give the railroad men any notice of it, because they look after that themselves."

Two other special questions were presented:

"1. Did the men employed make the usual inspection, and determine from such inspection that the cars were properly loaded?

"2. Were the cars drawn in the usual way up to the time of the accident?"

And the court was also asked to instruct the jury to answer these in the affirmative. But neither of these questions could have been held decisive if so answered, in a suit by a passenger for injuries resulting; and the circuit judge had already instructed the jury that recovery could not be based upon the manner of running the train. A railroad company cannot discharge its liability to a passenger by showing that its agents inspected the cars before starting out on the trip, if in fact the train was not in proper condition with respect to the safety of the passenger. Carriers of passengers are held to the highest degree of diligence, and cannot avoid responsibility by showing that they intrusted the duty of providing for the safety of passengers to a subordinate agent, who failed to exercise due care.

It was not error to admit the testimony of witnesses as to the rate of speed. As was said in *Guggenheim v. Railway Co.*, 66 Mich. 155:

"It is probable that the testimony of these witnesses was of little worth; yet there was no error in receiving it, as it was competent as far as it went."

See, also, *Detroit & Milwaukee R. R. Co. v. Van Steinburg*, 17 Mich. 99.

We find no error committed on the trial to the prejudice of the defendant.

The judgment will be affirmed.

LONG, GRANT, and HOOKER, JJ., concurred. MCGRATH, C. J., did not sit.