LINE *v.* GRAND RAPIDS & INDIANA RAILWAY CO.

143   163
146  ¹156
143   163
154  ²376

1. RAILROADS—NEGLIGENCE—CROSSING ACCIDENT—QUESTION FOR JURY.

Where, in an action against a railroad company for injuries sustained in a crossing accident, plaintiff and his witnesses testify that they were listening, and would have heard the statutory signals had they been given, that the accident occurred at about 5 o'clock in the morning, that it was dark and that the headlight on the locomotive was not burning, which testimony is contradicted by witnesses for the defendant, a question is presented peculiarly within the province of the jury.

2. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT—REFUSAL OF NEW TRIAL.

In reviewing the refusal of the trial court to grant a new trial because the verdict is against the weight of the evidence, this court brings to the support of the decision of the trial judge all reasonable presumptions which arise from his superior opportunity to determine the credibility of witnesses, and recognizes the principles which have always governed trial courts in determining whether or not verdicts should be set aside.

3. EVIDENCE—EXPERTS—COMPETENCY.

A witness who states that he has lived by the side of the railroad track four years, has observed the speed of trains and timed them between stations, and just returned from a railroad journey to a distant State, is competent to express an opinion upon the speed of a train, the objections that might be suggested against his testimony going rather to its weight than to its competency.

4. RAILROADS — NEGLIGENCE— CROSSING ACCIDENT — ACTION — INSTRUCTIONS.

Where, in an action against a railroad for injuries received in a crossing accident, plaintiff makes no claim for damages because of the speed of the train, and evidence relative to the speed is admitted solely as bearing upon the question of plaintiff's contributory negligence, an instruction so stating the purpose of that evidence to the jury and stating that an undue rate of speed, independently, would not be negligence on the part of defendant, is not open to the objection that it

gives the question of undue speed unnecessary prominence, there being evidence that the speed was unusual and undue.

5. SAME—EVIDENCE—SPEED OF TRAIN.

Where, in an action against a railroad company for injuries sustained in a crossing accident, it is plaintiff's claim that on a dark, stormy morning he approached defendant's track with a purpose of crossing, that he stopped, looked, and listened, and heard nothing, that he drove upon the track, when defendant's train came upon him out of the darkness without warning, running at a high rate of speed without a headlight, and defendant claims that he was guilty of contributory negligence, testimony that the train was running at a high rate of speed is material upon the question whether plaintiff did what a reasonably prudent man would do under the circumstances.

Error to Antrim; Mayne, J. Submitted December 5, 1905. (Docket No. 152.) Decided March 5, 1906.

Case by David A. Line against the Grand Rapids & Indiana Railway Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*T. J. O'Brien, J. H. Campbell,* and *Roger Irving Wykes,* for appellant.

*W. S. Mesick,* for appellee.

MOORE, J. This is an action to recover damages for a personal injury. The plaintiff was injured through being struck by a train on the morning of January 11, 1899, at a highway crossing in the village of Alba, Mich. The plaintiff recovered a substantial judgment. The defendant afterwards made a motion for a new trial on the ground that the verdict was against the weight of evidence. This motion was denied. The case is brought here by writ of error.

It is strenuously insisted the lower court was clearly in error in refusing to grant the motion for a new trial under the statute—counsel citing *Baldwin* v. *Railway Co.,* 128 Mich. 417–420; *Whipple* v. *Railroad Co.,* 130 Mich. 460,

462; *Cole* v. *Railway*, 132 Mich. 122, 125; *Hintz* v.
*Railroad Co.*, 132 Mich. 306, 308.

A brief statement of the claim of plaintiff is important.
It is his claim that while in the exercise of due care, he
was injured at a highway crossing because of the negli-
gence of defendant. In the course of his examination as
a witness he gave the following testimony:

"I got up about 4 o'clock, fast time. The sleigh I was
drawing logs on was a pair of handmade sleighs made in
Gaylord. Had swing bunks. They were a good pair of
strong, heavy sleighs. The barn where I kept my horses
was about 30 rods west of the railroad. It stood back
from the street quite a distance. It was not daylight when
I left the barn. It was quite dark yet in the morning.
There was no moon shining. It was quite cold and a fine
snow falling, and the wind blowing.

"*Q.* Well, what did you do after you left the barn?

"*A.* Well, I passed on out north through the lot till I
struck Maple street running east. I followed that street
east, and when I came to about 30 feet of the railroad
crossing, I saw a dim light there, so I stopped my team,
but I see it wasn't moving, and it was too small for the
headlight of an engine, so I raised up on my feet to look
south, but I couldn't see down along the track south.
There was some box cars there on the track, so I stood
there a reasonable length of time, and sat down on my
seat, and drove on, and just as I drove down on the snow
plowed road, and kind of swung my team around, I looked
around, and there the train was right on me.

"*Q.* I ask you during the time you were traveling this
distance of about 30 feet, where you stopped, as to whether
you looked and listened during that time for a train?

"*A.* I did, sir.

"*Q.* I ask you whether you listened, at the time you
stopped, for a train?

"*A.* I did. I looked and listened both.

"*Q.* Now, what do you say as to this train that came
onto you, or this locomotive, where did it strike your team
and you?

"*A.* Well, I couldn't say where it struck me. I had
just swung my team around on the track, and it seemed
as though it struck the one horse right in between the
horses, kind of—you know.

"*Q.* The train that struck you was coming from the southwest ?

"*A.* Yes, sir.

"*Q.* Now, did you hear any train coming ?

"*A.* No, I did not.

"*Q.* Was there anything to prevent your hearing the train coming if it had given the usual signals ?

"*A.* No, sir.

"*Q.* Did they blow any whistle or ring any bell before approaching that crossing ?

"*A.* No, sir.

"*Q.* What do you say as to there being any reflection or light there, what is ordinarily called a headlight, upon this locomotive, at this time ?

"*A.* There was none.

"*Q.* Was there any light reflected from that locomotive down the track ?

"*A.* No, sir.

"*Q.* Did you see any light reflected, or hear any sound of the blowing of the whistle or the ringing of the bell of that locomotive before you approached within about 30 feet of where you claim you stopped, and looked, and listened for the train ?

"*A.* No, sir, I heard no sound of any kind that morning of any train; *that is, of that train.*

"*Q.* Would you have heard those signals if they had been given within a reasonable distance ?

"*A.* I think I would.

"*Q.* Well, were you listening for a train at the time that you stopped there within 30 feet of the track ?

"*A.* Yes, sir, I was.

"*Q.* And I understood you to say that you satisfied your mind, after stopping there, that no trains were coming, either from the north or from the south ?

"*A.* Yes, sir, I did."

His testimony is corroborated by other witnesses who testify they were listening, and would have heard if the statutory signals had been given. Several witnesses also testified that the accident occurred at about 5 o'clock in the morning, that it was dark, and that the headlight of the locomotive was not burning. This testimony was contradicted by witnesses on the part of defendant. This presented a question peculiarly within the province of the jury. *Carver* v. *Plank Road Co.*, 61 Mich. 592;

*Straugh* v. *Railroad Co.*, 65 Mich. 707; *Crane* v. *Railroad Co.*, 107 Mich. 511; *Quirk* v. *Railway*, 130 Mich. 654; *Hintz* v. *Railroad Co.*, 132 Mich. 305; *Chauvin* v. *Railway*, 135 Mich. 85; *Smith* v. *Railroad Co.*, 136 Mich. 224; *Thurston* v. *Railway*, 137 Mich. 231; *Herring* v. *City of St. Joseph*, 137 Mich. 480; *McVean* v. *Railway*, 138 Mich. 263; *Coffee* v. *Railroad Co.*, 139 Mich. 378; *Potter* v. *Railroad Co.*, 140 Mich. 362.   The circuit judge saw and heard the witnesses.

In *Hintz* v. *Railroad Co.*, 132 Mich., at page 308, in discussing the duty of this court when the trial judge had refused a new trial, Justice Carpenter said:

"In exercising it, we are bound to recognize the principles which have always governed trial courts in determining whether or not verdicts should be set aside.   We are also bound to bring to the support of the decision of the trial judge all reasonable presumptions which arise from his superior opportunity to determine the credibility of witnesses."

We do not think it can be said the testimony offered on the part of the defendant overcame this reasonable presumption.   See, also, *Finkbinder* v. *Ernst*, 135 Mich. 226.

A witness by the name of Cooper was allowed to express an opinion as to the speed of the train.   His testimony was objected to, *first*, because no averment was made in the declaration of negligence; and, *second*, because the witness was not competent to express an opinion. Counsel disavowed any claim of damages because of the speed of the train, and it was admitted as bearing simply upon the question of whether plaintiff was guilty of contributory negligence.   We will discuss this objection later in connection with the charge of the judge.

Was the witness competent to express an opinion ?   He testified he had lived by the side of the railroad track four years.   Had observed the speed of trains.   Had ridden upon the cars.   Had timed trains between stations, and had just returned from a railroad journey to and from the State of Missouri.   A like question to this arose in the

case of *Detroit, etc., R. Co.* v. *Van Steinburg,* 17 Mich. 99. Justice COOLEY speaking for the court said:

"The point to which the attention of the witnesses was directed was the speed of a passing object. The motion of the train was to be compared to the motion of any other moving thing, with a view to obtaining the judgment of the witness as to its velocity. No question of science was involved, beyond what would have been, had the passing object been a man or a horse. It was not, therefore, a question for experts. Any intelligent man, who had been accustomed to observe moving objects, would be able to express an opinion of some value upon it, the first time he ever saw a train in motion. The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with timepiece in hand, the motion of an object of such size and momentum; but this would only go to the weight of the testimony, and not to its admissibility. Any man possessing a knowledge of time and of distances would be competent to express an opinion upon the subject."

See, also, *Carter* v. *Carter,* 36 Mich. 209; *Grand Rapids, etc., R. Co.* v. *Huntley,* 38 Mich. 540; *Laughlin* v. *Railway Co.,* 62 Mich. 226–230; *Guggenheim* v. *Railway Co.,* 66 Mich. 150; *Thomas* v. *Railway Co.,* 86 Mich. 496; *Keating* v. *Railroad Co.,* 104 Mich. 418; *Mertz* v. *Railway,* 125 Mich. 16. We think the witness was competent to express an opinion.

Counsel assign error because the judge in his charge to the jury used the following language:

"Now some evidence has been introduced relative to the rate of speed at which this train was traveling. The plaintiff does not ask in his declaration for damages because the train was going at an undue or unusual rate of speed. This evidence was introduced solely for this reason: The rate of speed might be a material fact in determining whether the plaintiff was guilty of negligence. It was not introduced for the purpose of showing negligence on the part of the defendant. Whether the plaintiff was guilty of negligence or not might depend to a considerable extent, possibly, upon the rate of speed which the train was traveling. I therefore limit the effect of the evidence as to the rate of speed, to the question of con-

tributory negligence; that is the negligence of the plaintiff, if they were traveling at an undue rate of speed, that, of itself, independently, would not be negligence on the part of the defendant."

Counsel say:

"While it is true that the speed at which a train is traveling may, at a crossing where the view is obstructed, or partially obstructed, have a bearing upon the contributory negligence of the plaintiff, as showing his ability to see the train in time to get across or remain in a place of safety before it reached the crossing, and instruction which went no further than to present that question to the jury would have been proper, still, where the court, as in this case, gives the question of an undue rate of speed an important bearing upon the plaintiff's contributory negligence where there is no evidence that the train was traveling at an undue rate of speed, and where almost any rate would have been permissible, the court goes beyond what is proper."

We do not think the charge is open to the criticism of counsel. There was testimony tending to show that upon a dark morning a train approached the highway crossing in a village, without giving the statutory signals, at a rate of speed of 30 or 40 miles an hour. This testimony was contradicted by witnesses on the part of defendant, who said the train was going but 16 or 18 miles an hour. The judge expressed no opinion as who of the witnesses was right, but said that even though they found the train was going at an undue or unusual speed, that of itself would not be negligence on the part of the defendant, and cautioned the jury that the testimony was permitted only as bearing upon the question of contributory negligence. We think there was evidence of an undue and unusual rate of speed.

It is suggested that as the plaintiff testified he did not see the train, the testimony as to its speed was not material, and the court erred in that portion of his charge. In passing upon this question we must not overlook the contention of counsel for defendant. It is their claim here and in the court below that:

" The case is not to be distinguished from an accident occurring in the daytime.   It was as late as 5:30 or 5:45 o'clock in the morning enabling dark objects to be plainly seen, and by the testimony of numerous witnesses, which can be said to be uncontradicted, it was sufficiently light to make out this train for a long distance—much more than a sufficient distance to have enabled plaintiff to at any time see the train and avoid being struck, had he looked."

We quote further from the brief:

" The speed of the train, as testified by those best situated to judge, and as indicated by the only competent testimony in the case, was about 18 miles per hour.   With the train going at this speed, at any point between 30 feet from the track and the crossing the plaintiff might have seen it in time to have stopped, and if it was not in sight when he reached the track, he would have had time to cross without being struck."

Counsel claimed that plaintiff was guilty of contributory negligence as a matter of law.   It was the claim of plaintiff that he was not guilty of contributory negligence. That the morning was dark and stormy.   That within 30 feet of the track he stopped, and looked, and listened, and saw and heard nothing.   That he continued to listen, and, as he got upon the crossing, without any warning whatever of its approach, there suddenly appeared out of the darkness and the storm the locomotive attached to a logging train running at great rate of speed, and, before he could get out of its way, he was struck.   It was proper to present this claim of plaintiff as against the theory urged by defendant.   As bearing upon the question of whether plaintiff did what a reasonable man would do under the circumstances, we think the testimony might be considered.

We have examined the other assignments of error, and do not deem it necessary to discuss them.

Judgment is affirmed.

MCALVAY and GRANT, JJ., concurred.   BLAIR and HOOKER, JJ., concurred in the result.