DUPUIS *v.* SAGINAW VALLEY TRACTION CO.

1. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT.

In exercising its duty of reviewing the action of the trial judge in refusing a new trial, this court is bound to recognize the principles which have always governed trial courts in determining whether or not verdicts should be set aside, and is also bound to bring to the support of the decision of the trial judge all reasonable presumptions which arise from his superior opportunity to determine the credibility of the witnesses.

2. CARRIERS—STREET RAILROADS—INJURY TO PASSENGER—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

In an action against a street railroad company for injury to a passenger by being thrown from a car rounding a curve at excessive speed, evidence examined, and *held*, to make a case for the jury notwithstanding plaintiff claimed to have been thrown towards the inside of the curve in apparent conflict with the law of centrifugal force.

3. DAMAGES—PERSONAL INJURY—EXCESSIVENESS.

A verdict for the full present worth of plaintiff's entire earnings during his expectancy of life is not excessive, in favor of a man 50 years of age, in perfect health, for an injury rendering him a physical wreck and seriously affecting his mind.

4. WITNESSES—IMPEACHMENT—CORROBORATION—EVIDENCE.

Where witnesses have stated that plaintiff promised them a suit of clothes if they would testify for him and he were successful, it is not improper to show by them and by him that no harm was intended and that what was said did not influence their testimony.

5. EVIDENCE — WEIGHT — PREPONDERANCE OF EVIDENCE — WHAT CONSTITUTES.

It is error to charge that the number of witnesses has nothing to do with the preponderance of the evidence.

6. TRIAL—VIEW—DISCRETION OF COURT.

Refusal of defendant's offer to take court and jury to view the place where a street car accident happened, and to take them around the curve on the car under similar circumstances, is discretionary with the court.

Error to Saginaw; Beach, J. Submitted April 11, 1906. (Docket No. 48.) Decided October 29, 1906.

Case by Moses V. Dupuis against the Saginaw Valley Traction Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*Humphrey, Grant & Smith,* for appellant.

*Weadock, Purcell & Weadock,* for appellee.

MOORE, J. This is an action to recover damages for injuries alleged to have been received by the plaintiff on May 2, 1904, on account of his being thrown from the rear platform of one of defendant's street cars while going around a curve at the intersection of Sixth and Wadsworth streets. The court was requested to direct a verdict in favor of defendant. This he declined to do. Plaintiff recovered a judgment for $16,927. Defendant then made a motion for a new trial, and asked the judge, in case the motion was overruled, to file his reasons for doing so. The judge complied with this request, as follows:

"It is not claimed in the motion for a new trial that any testimony was improperly admitted or rejected.

Neither is there any claim made that the plaintiff's attorney made any improper remarks to the jury during the trial of said cause, and the only questions for my consideration are the four questions raised:

"*First.* Because said verdict is against the evidence in this case. I am unable to find from all the evidence introduced upon the trial that the verdict is against the evidence in the case; and it seems to me there was sufficient evidence to submit to the jury for their consideration.

"*Second.* Because said verdict is against the weight of the evidence in the case. Several persons claimed upon the trial that they saw the plaintiff thrown off from the car as it rounded the curve on Wadsworth street, and that the car was running as it rounded the curve at a very high and dangerous rate of speed. The motormen who were placed upon the stand for the defendant claimed that if the cars were running the rate of speed as claimed by the plaintiff's witnesses the car could not have made the curve, but would have continued straight ahead and jumped the track. Defendant produced witnesses to show that the centrifugal force would have thrown the plaintiff to the north, instead of the south. The plaintiff produced witnesses who testified that they had made the experiment, and that they were thrown to the south, and that the plaintiff must have been thrown just exactly as he claims he was thrown. From this evidence, which was in direct conflict, I cannot find that the verdict was against the weight of the evidence. If the court is to weigh all of the evidence when there is positive evidence on both sides of the question and say that one set of witnesses are telling the truth and the others a falsehood, and what weight to give to each, then he is placing himself in the place of the jury. The facts, as I understand it, are for the jury, and not for the court, except where the facts are undisputed, or where but one conclusion could be drawn from all the evidence. In my opinion the evidence was not such in this case.

"*Third.* Because said verdict is in disregard of the charge of the court in said cause. I cannot concur with the defendant upon this point in the case, as the question of fact was left entirely with the jury and they found against the defendant, and I believe there were sufficient facts before the jury, if they believed them to be true, to warrant them finding as they did.

"*Fourth.* Because the said verdict was excessive. If

the plaintiff is injured, as claimed by him, and his physicians and the different witnesses that testified as to his physical and mental condition, he was upon the stand where the jury could see him, and the manner in which he gave his testimony; and if he is not an impostor, the verdict is not excessive. If he is not injured as claimed by him he is the greatest actor that I ever saw upon the witness stand, and he is an impostor and not entitled to any damages. I cannot say from the testimony in this case that he is shamming; the jury were cautioned about the verdict they should render; and in this motion there is no claim made that any remarks were made that would prejudice the jury in rendering as large a verdict as they did. Several cases of this nature have been to the different courts, and the verdict has been upheld. In our own State, in the case of *Retan* v. *Railway Co.*, 94 Mich. 146, a verdict of $30,000 was sustained."

The learned judge then cited *Texas, etc., R. Co.* v. *Kelly*, 34 Tex. Civ. App. 21; *International, etc., R. Co.* v. *Moynahan*, 33 Tex. Civ. App. 302 (15 Am. Neg. Rep. 199); *Smith* v. *Whittier*, 95 Cal. 279; *Tuthill* v. *Railroad Co.*, 81 Hun (N. Y.), 616. The motion for a new trial was overruled. The case is brought here by writ of error.

It is claimed by the plaintiff that the accident for which he seeks recovery was caused by his falling or being thrown from one of the cars on the defendant's Lapeer Street Line, as it was going around the curve at the corner of Wadsworth and Sixth streets. What is known as the "Lapeer Street Line" is operated from the corner of Washington and Genesee streets over Genesee street to Lapeer, over Lapeer street to Sixth, from Sixth street to Wadsworth, then over Wadsworth street to the end of the line. When the cars leave the corner of Genesee and Washington, there are two men on the car, a motorman and a conductor. These men continue on the car until they get to the switch in Sixth street. This switch is three blocks south of the curve where it is claimed the accident happened. At this switch, the motorman leaves the outgoing car and gets onto the returning car, bringing

it back to the corner of Washington and Genesee streets. The conductor of the outgoing car then goes forward and takes the controller as motorman, taking the car to the end of the line on Wadsworth street as a one-man car. When the conductor goes forward he raises the front curtains so he can look into the car, and he acts as conductor, as well as motorman, from that point on. It is claimed he did not realize he was at the curve until too late to check the speed of the car. The negligence claimed is that the car from which it is claimed the plaintiff was thrown was not run around the curve with due care, but was running at a high and dangerous rate of speed, to wit, 15 miles an hour, and upwards; and that, by reason of the car being run at this high rate of speed around the curve, the plaintiff, who was standing on the rear platform smoking, was thrown with great violence to the street. It is claimed by defendant, *first*, that the car did not pass around the curve at a great rate of speed; *second*, that it was a physical impossibility for the plaintiff to be thrown from the back platform toward the inside of the curve as he claims he was thrown. That instead of being thrown toward the inside of the curve the tendency would be to throw him closer to the support against which he claimed he was standing. Counsel say:

"In accordance with the natural laws relating to centrifugal force, and with the experience of every one who has ridden around a corner on a vehicle of any kind, the tendency is to throw objects to the outside, instead of toward the inside of the curve."

We are asked, and the judge below was asked, to take notice of this natural law, and to rely upon it, and to disregard the testimony of the witnesses upon the part of the plaintiff.

The two important questions are: *First*. Did the court below err in declining to direct a verdict in favor of defendant? *Second*. Did it err in overruling a motion for a new trial? The two questions, so far as they relate to whether there was testimony which required the case to

be submitted to the jury, may be considered together. No one can read the record without reaching the conclusion that plaintiff was badly hurt the night in question. Counsel intimate in their brief that he was hurt because he stepped off the car while it was in motion upon a portion of the street where they were repaving and fell, and that he alone was at fault. Defendant swore several witnesses who rode in a car around the curve at great speed at the time the trial was in progress. These witnesses gave testimony tending to support the theory of the defendant. On the other hand, testimony was given, tending to show that when a north-bound car was rounding the curve, at first the passenger would be thrown to the left; but, when the rear truck struck the curve, it would throw the person to the right. Besides this, the plaintiff, and at least four others who claimed to have seen the accident, swear the plaintiff was in fact thrown off the platform as he claims. Nine witnesses in all, besides the plaintiff, testify to facts from˘ which the only inference reasonably to be drawn is that plaintiff was thrown from the platform as he claims. Unless the court is to substitute its judgment upon questions of fact for that of the jury, it logically follows that it would have been error to refuse to submit the question to the jury. See the late case of *Line* v. *Railway Co.*, 143 Mich. 163, where many of the decisions of this court upon that point are collated. In *Hintz* v. *Railroad Co.*, 132 Mich. 308, in discussing the duty of this court when the trial judge had refused a new trial, Justice CARPENTER said:

"In exercising it, we are bound to recognize the principles which have always governed trial courts in determining whether or not verdicts should be set aside. We are also bound to bring to the support of the decision of the trial judge all reasonable presumptions which arise from his superior opportunity to determine the credibility of witnesses."

See, also, *Finkbinder* v. *Ernst*, 135 Mich. 226; *Line* v. *Railway Co.*, supra.

As said before, a number of witnesses testified supporting fully plaintiff's theory of the case. The circuit judge saw and heard these witnesses, and had an excellent opportunity to judge of their truthfulness. He did not abuse his discretion in refusing a new trial upon the ground that the verdict was against the weight of the evidence.

Was the verdict so excessive as to make it his duty to grant a new trial? Counsel say:

"In spite of all of these inaccuracies of the testimony and based solely upon the opinion evidence of plaintiff experts, all of whom admit the possibility of their being mistaken, the jury rendered a verdict for $16,927, which is the full present worth of his entire earnings during his full expectancy of life at the highest remuneration he was able to show that he had ever earned. Such a verdict ought not to be permitted to stand."

The testimony upon the part of the plaintiff tended to show that, at the time of the injury, his earning capacity was such that the present worth of his earnings, based upon his expectancy of life, would equal the amount of the verdict. In addition to this, it is shown that the plaintiff, who was 50 years old at the time of his injury, weighing 200 pounds, and in perfect physical and mental health, has become a physical wreck, and that his mind is very badly affected. This being the record, we do not think we ought to say we will set aside the action of the circuit judge (who saw the plaintiff at the trial) in refusing a new trial because the verdict was excessive. In addition to the authorities cited by the circuit judge, see *Chicago, etc., R. Co.* v. *Holland*, 18 Ill. App. 418; *Illinois Cent. R. Co.* v. *Souders*, 79 Ill. App. 41; *Shaw* v. *Railroad Co.*, 8 Gray (Mass.), 45; *Gulf, etc., R. Co.* v. *Shelton*, 30 Tex. Civ. App. 72; *Fonda* v. *Railway Co.*, 77 Minn. 336; *Galveston, etc., R. Co.* v. *Hynes*, 21 Tex. Civ. App. 34.

Errors are assigned as to the admission of testimony. We deem it necessary to discuss only one of them. We quote from brief of counsel:

"The witnesses Don Lacy and James McGory had both testified that the plaintiff had offered them a suit of clothes if they would testify in his behalf, provided he won the case; and, in the questions covered by assignments 3, 4, 5, and 6, plaintiff's counsel was permitted to ask these witnesses, in substance, whether these promises by the plaintiff had in any way affected their testimony, or caused them to tell anything different than the truth, and by the question covered by assignment No. 39 plaintiff was asked whether in this arrangement he attempted to influence these witnesses to tell anything but the truth."

If the testimony of these witnesses had been left where it was left by counsel, it would have been argued to the jury, as it is argued here, that plaintiff had attempted to bribe these men to distort the facts in his favor. The examination which was permitted by the circuit judge, and of which complaint is made, drew out just what was said, the circumstances under which it was said, the effect of what was said, tending to show that no one intended any harm, and that what was said did not influence the testimony of the witnesses. We do not think it was error to permit this testimony.

The court charged the jury as follows:

"In order for the plaintiff to recover in this case it is necessary for him to establish by his proofs three separate and distinct facts:

"*First.* That the defendant company was negligent in the manner in which it ran its cars at the time of his injury, and while he was a passenger upon the car.

"*Second.* That the plaintiff himself, at the time of the happening of the accident, was in the exercise of and was taking ordinary care for the preservation of his own safety.

"*Third.* That the negligent running of the car by the defendant was the cause of the plaintiff being thrown from the car; and, in order for the plaintiff to recover, it is necessary for you to find the existence of each one of these three propositions by a preponderance of the evidence in the case. A preponderance of the evidence means simply evidence *that outweighs that which is brought to oppose it. You have a right to believe one person in preference to a dozen others, if you believe*

*what that person has testified to, that it is the truth;
it does not mean that the person who has proved his
cause by a preponderance of the evidence must have
sworn more witnesses, as the number of witnesses has
nothing to do with the case in the determination of
the question of preponderance of the evidence.*"

Error is assigned in relation to the part in italics. Counsel for appellee seek to justify this charge by saying it is substantially the same as the one approved by this court in *Strand* v. *Railway Co.*, 67 Mich. 380. We cannot agree with counsel in this contention. We have quoted all of the charge of the court upon the subject of the burden of proof. This court has never said that "the number of witnesses has nothing to do with the case in the determination of the question of preponderance of evidence." We have held that it was not conclusive, and that the jury might believe one witness as against any number of others, if convinced of his truthfulness, but it is always the duty of the jury to consider the number of the witnesses as well as the quality of the evidence in determining where the truth lies. The case at best was a close one, and we cannot say that this improper charge may not have misled the jury. For this reason we think the case must be reversed. We concur in the second proposition discussed by Justice GRANT.

It is reversed, and a new trial ordered.

CARPENTER, C. J., MCALVAY and BLAIR, JJ., concurred with MOORE, J.

GRANT, J. 1. This case is without a parallel in cases of negligence. It appears to be in conflict with the law of centrifugal force, in the operation of which there is no exception. Some other power must have operated in opposition to centrifugal force to throw the plaintiff in the manner claimed. He stood with his back against the closed door, facing the open door, upon the opposite side of the car. He testified:

"I was braced up there, so I thought I was braced safe

to stand up there, with my back against the wall and my feet ahead, holding my balance from any shaking."

Suddenly, according to his own testimony and the testimony of others who saw the accident at some distance away, he was thrown from this position across the car and into the street 10 feet from the car, in the direction directly opposite to the law of centrifugal force, and fell upon his back. The claim, as I understand it, is that, when the forward wheels struck the curve, the law of centrifugal force is in operation, but when the rear trucks strike the curve the centrifugal force has ceased to operate and there is a violent force in the opposite direction.

In rounding a curve, the motorman having lost control of the car in descending a grade, a passenger standing upon the platform and having hold of the iron rod claimed that, as the car rounded the curve, the centrifugal force was sufficient to, and did, throw her from the car to the street. In that case as in this, there would be no tendency to throw a passenger either way until the curve was reached. In this respect that case and this seem to be parallel. The claim of the defendant in that case was that the passenger jumped from the car. The court said:

"There is nothing so inconsistent in the idea that the centrifugal force should have broken her hold and thrown her from the car as to justify the jury in finding that she jumped off," etc. *Howell* v. *Railway Co.*, 136 Mich. 432, 436.

I confess it is difficult to understand how this plaintiff, under similar circumstances, could be violently thrown in the opposite direction a distance of nearly 15 feet, contrary to the law of centrifugal force. The defendant gave evidence of experiments over this same curve, with the same car, at various rates of speed, some of which were the full speed of the car. Six witnesses participated in these experiments. All testified that in the position occupied by the plaintiff the only tendency was to throw the body in accordance with the law of centrifugal force.

Of these witnesses four were in the employ of the defendant, and two were disinterested citizens.

In rebuttal plaintiff produced two witnesses. Their testimony is as follows: The witness Herbert:

"*Q.* Has your attention been directed in any way to the tendency in which, rounding the curve on the corner of Sixth and Wadsworth streets — the direction it would tend to throw a passenger standing on the rear platform?

"*A.* Yes, it would throw him to the east.

"*Q.* And that means what direction?

"*A.* To the right.

"*Q.* To the open door?

"*A.* Yes, sir."

Cross-examination:

"*Q.* When was it that you were on the car to test that?

"*A.* I never was there to test that."

Witness William Brown:

"*Q.* Have you given attention to the effect of a passenger standing upon the rear platform of a street car passing around the Sixth Street curve from the south to the east?

"*A.* Yes.

"*Q.* And what would be the tendency, as to what direction it would throw him in rounding the curve?

"*A.* Well, say the car, when it strikes the switch, the tendency would be to throw to the left, and when the second pair of wheels strikes it, it would throw to the right.

"*Q.* And when thrown to the right what direction is it?

"*A.* Towards the door.

"*Q.* And what effect does it have upon the feet?

"*A.* Why, it would take the feet out from under him."

The force must have been very great to throw the plaintiff, a strong man weighing 200 pounds, from the braced position, across the platform of the car through the open door into the street. Under the testimony of the plaintiff and his witnesses, if the jury believed them, it did occur,

and I am compelled to concur in the opinion of my Brother MOORE, that there was a disputed issue of fact for the jury. I concur in reversing the case for the error in the charge of the court, as stated in my Brother's opinion. Inasmuch as a new trial is granted, I express no opinion upon the other questions raised upon the motion for a new trial.

2. The refusal of the court to direct a view of the premises and to accept the offer of defendant "to take the court and the jury out on that curve and arrange to make, with the court and jury, the turn of the curve on that car," rested in the sound discretion of the court, and error cannot be assigned upon his order or refusal. 6 Thompson on Negligence, § 7878; *Mulliken* v. *City of Corunna*, 110 Mich. 212; *Williams* v. *City of Grand Rapids*, 53 Mich. 271; *Stewart* v. *Railway Co.*, 89 Mich. 318 (17 L. R. A. 539). The offer of the defendant in this case involved placing the jury and the judge upon the car, or placing them in the vicinity, where they might view the car with others standing upon it in the position in which plaintiff stood. Such a course was condemned in *Moore* v. *Railway Co.*, 93 Iowa, 484. I am not prepared to follow that decision.

In this case, a view of the situation would evidently have been of no aid, unless the car was driven around the curve at a rate equal to that when the plaintiff received his injury. Certainly the court could not have compelled the jury to place themselves upon this car, and have it driven around the curve at a dangerous rate of speed.