### KROUSE *v.* DETROIT UNITED RAILWAY.

NEW TRIAL — WEIGHT OF EVIDENCE — SETTING ASIDE VERDICT — MOTIONS.

 After one verdict has been set aside and a new trial granted because the verdict was against the weight of the evidence, and after a second trial resulting in a similar verdict, the trial court having expressed his opinion that the verdict was erroneous, but that he could not determine as a matter of law that it was contrary to the weight of evidence, the Supreme Court may grant a new trial on a record showing that the verdict rested on plaintiff's unsupported testimony contradicted by four disinterested witnesses who were unimpeached on any material point. MOORE, BIRD, and BLAIR, JJ., dissenting.

Error to Wayne; Mandell, J. Submitted February 15, 1911. (Docket No. 7.) Decided June 2, 1911.

Case by Ella Krouse against the Detroit United Rail-

way for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Brennan, Donnelly & Van De Mark,* for appellant.

*William C. Gottman,* for appellee.

BROOKE, J. In this case as set out in the opinion of my Brother MOORE, the plaintiff's right to recover rests upon her own unsupported statements as to the facts. Her interest is, of course, manifest. Opposed to her are four witnesses, not one of whom, at the time of the trial, had the slightest interest in the controversy. Drouillard, the conductor at the time of the accident, had been discharged by defendant before the case was tried in the lower court. Rogers, the motorman at the time, was, when the case was tried, employed by the Grand Trunk Railway. Whether he was discharged by defendant or left voluntarily the record does not disclose. David was a freight handler for the Grand Trunk, and McLellan a locomotive fireman. Three of these men, Drouillard, David, and McLellan, were upon the back platform at the time of plaintiff's injury and were consequently within a very few feet of her when she left the car. All four testify most positively that the car made no stop at Scotten avenue, and the three who were on the rear platform and saw plaintiff are equally positive that she stepped or stumbled off the car while it was in motion. The place in the street where she fell has also a very material bearing upon the probable truth of her statements. All agree that she lay upon the street at a point at least 150 feet west of Scotten avenue. After her injury she was carried back that distance to the drug store on the corner. In denying a motion for a new trial, the court made the following statement:

"While I do not agree with the jury in the conclusion reached by them, nevertheless I feel that on some material points the witnesses for the defense were impeached. One or two of the witnesses in giving their testimony conducted themselves in a manner that would not or might

not have carried conviction in the minds of the jury. This case was heretofore tried before Hon. George S. Hosmer, one of my associates, and a verdict at that trial was returned in favor of the plaintiff.   On a motion for a new trial, the court granted a new trial on the theory that the verdict then rendered was against the weight of the evidence.   It seems proper to consider this fact in now determining whether the verdict at the second trial was against the weight of the evidence.   While I agree with my Brother Hosmer, that the defendant should have prevailed at the trial, nevertheless, in view of the fact that twenty-four jurors have determined that the plaintiff, unsupported by other evidence, was to be believed in preference to the witnesses for the defendant, who were in some degree impeached, and in some particulars contradicted one another, nevertheless, I cannot as a matter of law find that the verdict was against the weight of evidence."

This language of the learned circuit judge most clearly shows that in his opinion the verdict, if followed by judgment, would result in a miscarriage of justice.   This situation differs radically from that discussed in *Dupuis* v. *Traction Co.*, 146 Mich. 151 (109 N. W. 413), and the difference renders the quotation made from that case by my Brother MOORE entirely inapplicable.   The functions of the jury are too well defined to require discussion.   I do not disagree with my Brother as to what those functions are.   But it is nevertheless a fact that sometimes juries do render verdicts against the weight of the evidence, and when they do render such verdicts, either through inadvertence, sympathy, or prejudice, it is the duty of the trial court to promptly set them aside.   The fact that a second jury falls into the same error which the first did should afford no reason for changing the rule or its application.   Upon the failure of the trial court to act under such circumstances, our own duty is clear.   In the late case (*In re McIntyre's Estate*, 160 Mich. 117 [125 N. W. 51]), this identical question was discussed at some length.   In that case, as in the case at bar, the trial judge, upon a motion for a new trial, had expressed his opinion that the verdict was against the weight of the evidence,

but, despite this conviction, had denied the motion. This court there said:

"We held in the case of *Hintz* v. *Railroad Co.*, 132 Mich. 305 (93 N. W. 634), that it was the duty of this court to review the evidence in a cause to determine whether a ruling upon a motion for new trial upon the ground that the verdict was contrary to the weight of evidence was erroneous. We cannot escape this responsibility which was doubtless imposed by the legislature to provide relief against palpable miscarriages of justice through unjust verdicts, which all judges and lawyers know to be not uncommon. In the exercise of this power this court cannot content itself with a mere determination that there is a conflict of evidence, and that the jury is as well qualified to judge of the facts and the credibility of testimony as itself, which was the rule before, or that the trial judge has approved the verdict or even expressed his own belief that the verdict is not against the weight of evidence, and thereupon affirm the denial of a motion, but it must examine the testimony and determine for itself whether or not the verdict is so plainly against justice as to call for a new trial. That this statute may be disapproved by those who entertain the idea that the verdicts of juries are necessarily and invariably honest, candid, discriminating and just, does not affect the question. Evidently the legislature has recognized the common belief that jurors have their foibles and juries their faults which interfere with the ideal administration of justice, and has attempted to apply a remedy by enlarging the rule heretofore adopted and followed by the appellate courts."

A careful examination of the record has failed to disclose to me a single instance where any witness for defendant was impeached or in any manner discredited as to the material question at issue; *i. e.*, "Did the car stop at or near Scotten avenue before plaintiff attempted to alight, or was it in motion when she alighted?"

I think the verdict is clearly against the weight of evidence. The judgment should be reversed, and a new trial ordered.

OSTRANDER, C. J., and HOOKER, McALVAY, and STONE, JJ., concurred with BROOKE, J.

MOORE, J. (*dissenting*). The plaintiff recovered a judgment of $700 for injuries received by her while alighting from one of defendant's street cars. The case is brought here by writ of error. The plaintiff testified in substance that she was a passenger on a Fort street car, and when the conductor called Campau-Scotten streets—

"I went to the door and asked him if he said Scotten, and he rang the bell, and I had my hand on the left side of the door, waiting for the car to go slow, and when the car began to go slow I walked out of the door, and he said   *   *   *   he would stop the car for me. When the car stopped, I put my left hand on the bar and stepped down the step, and was about to put my right foot to the ground when the car started and threw me, and that is the last I knew. I signaled the car to stop at Campau, whether just before or just after Campau I could not say. Campau is east of Scotten. Scotten is sixty paces from Campau. When I was getting off my foot was on the lower step and I was holding onto the bar with my left hand. The car came to a dead stop.   *   *   *   It was something after seven; I could not tell the exact time, for I don't know the time it would take to go that far. After I had been thrown from the car I don't know what happened to me then. I was unconscious after then, and found myself at a west side hospital, and remained there until Saturday."

The testimony of the conductor and two other witnesses on the part of the defendant tended to show that the car did not stop.

"We were going west on Fort street, and when I came to Campau avenue I called Campau and Scotten before I got there, and just after I had called a lady came from the middle of the car and asked if it was Scotten I called, and I said, 'Yes,' and she said, 'I want to get off there,' and I said, 'I will let you off the next stop,' and she said, 'All right,' and I gave the motorman the bell to stop. He had not stopped at Scotten avenue going west, and she jumped off the car as the car was in motion, after it passed there."

Some of the testimony offered by defendant was to the effect that the car was going seven to ten miles an hour

or even more.   It will be observed that the testimony was very conflicting.

In *Conely* v. *McDonald*, 40 Mich. 158, it was said:

" 'The court of trial may set aside a verdict which violates justice, and it is to that tribunal that parties must apply for relief against excessive damages or any other of the wrongs for which it may be right to grant a new trial.   We are bound in all cases to assume that the jury have done no legal wrong, when acting within their province.'

" * * *   Under our system of jurisprudence, the jury is called to pass upon the facts.

"It is not only their privilege but their right to judge of the sufficiency of the evidence introduced to establish any one or more facts in the case on trial.   The credibility of witnesses, the strength of their testimony, its tendency and the proper weight to be given it, are matters peculiarly within their province.   The law has constituted them the proper tribunal for the determination of such questions.   To take from them this right is but usurping a power not given.   The jury should be left entirely free to act according to their own judgment.   Where there is a total defect of evidence as to any essential fact, or a spark, the least particle, a scintilla, as it is termed, the case should be withdrawn from the consideration of the jury. Where, however, the evidence introduced has a legal tendency to make out a proper case in all its parts, then, although it may in the opinion of the trial court or the appellate court be slight, inconclusive, and far from satisfactory, yet it should be submitted to the jury, whose proper province it is to consider and determine its tendency and weight."

See, also, *Swoboda* v. *Ward*, 40 Mich. 424; *Rosie* v. *Willard*, 44 Mich. 383 (6 N. W. 872); *Maxwell* v. *Bridge Co.*, 46 Mich. 278 (9 N. W. 410); *Sheldon* v. *Railroad Co.*, 59 Mich. 175 (26 N. W. 507); *Brezee* v. *Powers*, 80 Mich. 182 (45 N. W. 130); *Weidman* v. *Symes*, 116 Mich. 620 (74 N. W. 1008).   Under these authorities it is evident the case was a proper one to be submitted to the jury.

Error is assigned upon the following in the charge:

"What is the claim of the defendant?   The claim of

the defendant company is, first, that the plaintiff in what she did, did not act in a prudent and cautious way. The claim of the defendant company is that the car was signaled to stop by her, but it was signaled so late that it was impossible to stop the car where she desired to have it stop, and that she, either through inadvertence, because it is inconceivable to believe that she did what the defendant claims she did purposely, so they claim, through absent-mindedness, or something else, stepped off the car while the car was in motion."

We quote from the brief:

"We submit that the language employed by the court was prejudicial to the defendant for the reason that it conveyed the impression that our claim was that she alighted from this car purposely."

The language of the court is somewhat ambiguous, depending upon the punctuation and where you place the emphasis, but the jury was instructed in the most positive way·

"If you find that the car was moving and was in motion when she attempted to get off, I charge and instruct you that she under such circumstances would be guilty of contributory negligence and could not recover."

It is claimed another portion of the charge was harmful because not supported by the evidence. That portion of the charge to which reference is made is not a statement of the evidence, but is a statement of the claim of the plaintiff, and we do not think it misleading. Error is assigned because the court did not give defendant's written requests which were laid upon his desk, but to which attention was not orally called. It is sufficient to say of this assignment of error that some of the requests it would have been improper to give, and as to those that were proper they were fully covered by the general charge.

After the verdict, a motion was made for a new trial, which motion was overruled. This is assigned as error, and counsel urge very strenuously that a new trial should have been granted because the verdict was against the

weight of the evidence.   In overruling the motion for a
new trial, among other things the circuit judge said:

"This case was tried by a jury, and the principal dis-
puted question of fact submitted for determination to the
jury was whether at the time the plaintiff attempted to
alight from the car of the defendant company, the said
car was at a standstill or was in motion.   On this disputed
question of fact it is true that there were four witnesses
on behalf of the theory of the defendant, and but one
witness, the plaintiff herself, who testified in favor of the
theory of the plaintiff.   It is on this ground that the de-
fendant urges that the verdict was against the weight of
the evidence.   The court instructed the jury that in
reaching a determination on this disputed question of fact,
it was their duty to take into consideration the number of
witnesses; the court also instructed the jury it was their
duty to consider the nature and character of the testimony
given by the various witnesses, the question as to whether
the witnesses had been impeached or not, and so forth.
While I do not agree with the jury in the conclusion
reached by them, nevertheless I feel that on some mate-
rial points the witnesses for the defense were impeached.
One or two of the witnesses in giving their testimony con-
ducted themselves in a manner that would not or might
not have carried conviction in the minds of the jury."

In *Dupuis* v. *Traction Co.*, 146 Mich. 156 (109 N. W.
414), in discussing the question of a new trial, the court
said:

"Unless the court is to substitute its judgment upon
questions of fact for that of the jury, it logically follows
that it would have been error to refuse to submit the ques-
tion to the jury.   See the late case of *Line* v. *Railway
Co.*, 143 Mich. 163 (106 N. W. 719), where many of the
decisions of this court upon that point are collated.   In
*Hintz* v. *Railroad Co.*, 132 Mich. 308 (93 N. W. 635), in
discussing the duty of this court when the trial judge had
refused a new trial, Justice CARPENTER said:

" 'In exercising it, we are bound to recognize the principles
which have always governed trial courts in determining whether or
not verdicts should be set aside.   We are also bound to bring to the
support of the decision of the trial judge all reasonable presump-
tions which arise from his superior opportunity to determine the
credibility of witnesses.'

" See, also, *Finkbinder* v. *Ernst,* 135 Mich. 226 (97 N. W. 684, 100 N. W. 180); *Line* v. *Railway Co., supra.*

"As said before, a number of witnesses testified supporting fully plaintiff's theory of the case. The circuit judge saw and heard these witnesses, and had an excellent opportunity to judge of their truthfulness. He did not abuse his discretion in refusing a new trial upon the ground that the verdict was against the weight of the evidence."

In *Bartle* v. *Railway Co.,* 132 Mich. 290 (93 N. W. 620), in an opinion written by Justice CARPENTER, this court declined to reverse the decision of the trial court in denying a motion for a new trial based on the ground that the verdict was against the weight of the evidence, where the only question was whether a street car was in motion at the time plaintiff attempted to alight, and her testimony was corroborated by other evidence, though the conductor and six passengers testified that it was in rapid motion.

In *Hyde* v. *Haak,* 132 Mich. 364 (93 N. W. 877), Justice GRANT, speaking for the court, said:

"There have been three trials before a jury, and each time a verdict has been rendered in favor of the plaintiffs. Twice the court below set the verdict aside, upon the motion of the defendants, on the ground that the verdict was against the weight of the evidence. After three verdicts, the court refused to grant a new trial. Defendants now ask that this action of the circuit court be reviewed.

" It is unnecessary to review the testimony. There was substantial evidence in behalf of the plaintiffs. Three juries have believed the witnesses on the part of the plaintiffs, rather than those in behalf of the defendants. It is not contended that there is not a conflict of evidence, so that the question is a proper one for the jury. After three juries have passed upon it, we think the court below was justified in refusing a fourth trial."

In *Stevens* v. *Soap Works,* 134 Mich. 350 (96 N. W. 435), Justice HOOKER, speaking for the court, said:

" We are cited to some extreme cases in support of the doctrine that an appellate court should order a new trial

when the defendant's testimony is corroborated, as against the unsupported testimony of the plaintiff. This court has never gone further than to reverse a case where the verdict is clearly against the overwhelming weight of evidence, and we think that this is not a case for reversal under our precedents."

In *Lovely* v. *Railway Co.*, 137 Mich. 653 (100 N. W. 894), Justice MONTGOMERY, speaking for the court, said:

"The case must be a very clear one, affording very strong evidence that the verdict is the result of bias or prejudice, to justify this court in overturning a decision of the trial judge adverse to a new trial on this ground. He has the advantage of having seen the witnesses, and of having noted their appearance on the stand."

In *Re Hoyles' Estate*, 162 Mich. 275 (127 N. W. 284), Justice STONE, writing the opinion, this court declined to direct a new trial, though the trial court in denying the motion for a new trial used language indicating that in his opinion the verdict was against the weight of evidence.

If the plaintiff told the truth, the conductor and motorman did not. That presented a question of fact for the jury. An examination of the record shows the judge was right in saying that on some material points the witnesses for the defense were impeached and their manner in giving their testimony might have discredited them. There is nothing in this record to justify this court, which has not seen and heard the witnesses, in overruling the action of the trial judge who saw and heard them.

Judgment should be affirmed.

BIRD and BLAIR, JJ., concurred with MOORE, J.